490 P.2d 29

Elaine E. MATTHEWS, Petitioner,

v.

INDUSTRIAL COMMISSION of Arizona, Respondent,

Greyhound Food Management, Respondent Employer,

State Compensation Fund, Respondent Insurance Carrier.

No. I CA–IC 617.

Court of Appeals of Arizona, Division 1.

Nov. 4, 1971.

Rehearing Denied Nov. 24, 1971.

Review Denied Dec. 21, 1971.

Lawrence Ollason, Tucson, for petitioner.

William C. Wahl, Jr., Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Robert K. Park, Chief Counsel, State Compensation Fund by Harlan J. Crossman, Phoenix, for respondents carrier & employer.

KRUCKER, Chief Judge.

This is a writ of certiorari to review the Industrial Commission's award denying benefits for petitioner's claim.

Petitioner, Mrs. Elaine Matthews, allegedly sustained a hernia condition during the course and in the scope of her employment with respondent on 9 July, 1969. On 4 August, 1969, applicant filed a report of injury. By Notice of Claim Status issued 14 August 1969, applicant's claim was denied. On September 26, 1969, applicant filed a timely request for hearing and following hearings on three different occasions the Commission issued its Findings and Award for Non-Compensable Claim of 10 December 1970, again denying applicant benefits. Applicant then applied for review of the award as provided by A.R.S. §§ 23–942, subsec. C and 23–943, subsecs. A and B. The 10 December 1970 award was reviewed and affirmed on 25 January 1971. From this affirmation applicant made time-

ly application to this court for a writ of certiorari.

■ In Arizona the burden of proof is upon the claimant to affirmatively show that he is entitled to compensation. Malinski v. Industrial Commission, 103 Ariz. 213, 439 P.2d 485 (1968); Waller v. Industrial Commission, 99 Ariz. 15, 406 P.2d 197 (1965). Where the evidence before the Commission is in conflict or different inferences may be drawn therefrom, the findings of fact of the Commission will not be disturbed unless its conclusion is wholly unreasonable. *Malinski*, supra; Books v. Industrial Commission, 92 Ariz. 302, 376 P.2d 769 (1962). The test for appellate review of an Industrial Commission award was set out by the Arizona Supreme Court in Estate of Bedwell, 104 Ariz. 443, 444, 454 P.2d 985, 986 (1969):

> "[I]t must appear that the evidence was such that as a matter of law, the award of the commission cannot be sustained because there is no reasonable basis in the evidence upon which the commission could have reached its conclusion."

The injury complained of here is one clearly defined in A.R.S. § 23–1043:

> "All hernias are considered injuries within the provisions of this chapter causing incapacitating conditions or permanent disability, and until otherwise ordered by the commission, the following rules for rating hernias shall govern:
>
> 1. Real traumatic hernia is an injury to the abdominal wall of sufficient severity to puncture or tear asunder the wall, and permit the exposure or protrusion of the abdominal viscera or some part thereof. * * *
>
> 2. *All other hernias* * * * are considered to be as shown by medical facts to have either existed from birth, to have been years in formation, or both, and *are not compensatory, unless* it is proved:
>
> (a) That *the immediate cause*, which calls attention to the presence of the hernia, *was a sudden effort or severe strain or blow* received while in the course of employment.
>
> * * * * * *
>
> (d) That the facts in subdivisions (a), (b) and (c) of this paragraph were of such severity that they were noticed by the claimant and communicated immediately to one or more persons." (Emphasis added)

■ In light of A.R.S. § 23–1043, the Commission's denial of benefits could be adequately supported by the testimony of the two doctors who examined the petitioner. The issue in conflict appears to be the date on which the hernia occurred. The testimony of Dr. Kerriston L. Marsh, D.O., suggests that petitioner had the pains here complained of (and perhaps the hernia) when he examined her on 23 April 1969, two months before the alleged accident on 9 July 1969:

> "Q. When was the first time you [Dr. Marsh] saw her? [Elaine Matthews]
>
> A. April 23rd, 1969.
>
> * * * * * *
>
> Q. Did you do a physical on here [sic] at that time?
>
> A. Yes, sir.
>
> Q. With relation to her abdomen, did you find any abnormalities in the area of the abdomen?
>
> A. Weakness in both lower quadrants of the abdominal floors. In part of the history that we took, the patient complained of a knot in the left side for the past five years; no pain without pressure or exertion. The growth had been noted to swell and subside on occasion.
>
> * * * * * *
>
> Q. How about the right side, Doctor?
>
> A. She stated that on occasion in the lower right quadrant area there would be a pain that would be intermittent. She intimated she had it since childhood; no known trauma recently.
>
> Q. Was that pain that she had that existed since childhood an intermittent pain?

A. That is my understanding.

Q. On this examination of April 23rd, 1969, in which you found the weakness in the quadrants, were these weaknesses in the femoral walls?

A. Yes, sir, this is in the general area I referred to as the inguinal areas.

Q. Were these hernias that you found?

A. This is a rather difficult question to answer. It would not be considered a frank hernia, but a definite weakness in the abdominal floors, the inguinal area.

Q. When you say a frank hernia, do you mean they were not hernias by definition; that they had not completed the process of becoming a hernia?

A. In other words, when I say frank hernia, it has not yet separated the muscular wall to the point where the abdomen contents and viscera were protruding through the abdominal wall.

\*　　\*　　\*　　\*　　\*　　\*

Q. Did you have occasion to see Mrs. Matthews again?

A. She came in on July 9th, 1969.

Q. What was the occasion for that visit?

A. The chief complaint was, quote, I have abdominal pain, unquote.

Q. Did you do an examination of her at that time?

A. We rechecked the abdominal walls as previously, and again, the impression was inguinal femoral wall weakness.

Q. Was the extent of the weakness, from your examination, the same as it had been in April, or was it different?

A. I would have to say approximately the same.

\*　　\*　　\*　　\*　　\*　　\*

Q. Based upon the history of intermittent pain in the right side since childhood, Doctor, would that leave you to form any opinion as to its longevity?

A. Obviously, since the age of four to five years she stated she had this dis-comfort in these areas. It may not be congenital per se, but since she had them since she was four to five years old, it had to be acquired at that time if those were hernias at that time.

Q. At any time did she give you a history of being involved in an industrial injury?

A. Not on either of these occasions here, sir.

Q. At any time did she talk to you about lifting trays weighing 30 pounds?

A. On neither of these occasions here."

The testimony of Dr. MacDonald Wood, M.D., is contradictory as to the date he first saw petitioner and confusing as to the date of the injury. This testimony further supports the Commission's denial of benefits.

\*　　\*　　\*　　\*　　\*　　\*

"A. Mrs. Matthews stated that as a waitress in Flagstaff she did a lot of lifting and was lifting ice in tubs, and somewhere around the *first of June* she began to have aching in the right groin. I first saw her on *August 15, 1969*. She stated that she had strained herself at work and that she had a bulging in the right groin following that. She stated she was off work for three weeks." (Emphasis added.)

\*　　\*　　\*　　\*　　\*　　\*

Q. Doctor, I would like to go over a couple of things that shouldn't take but a couple of moments. Was the history that you received that she was lifting tubs on the 1st of June?

A. There are two statements here. What I first read was from the history that was given to the surgical resident at St. Joseph's Hospital. Referring to my notes when I first saw her on *October 15, 1969,* she stated that she had hurt her right side about a month ago and she mentioned *July 9 as the date.*

Q. What did she give the surgical resident?

A. The record states approximately *two and a half months ago* she began to have aching in her right inguinal area. This was a *history taken on 8–17–69.*

Q. That would be around the first of June?

A. That is how I made by interpretation when I made the first statement.

Q. Obviously the two histories are a little different, is that correct, Doctor?

A. Right." (Emphasis added.)

The Commission's award is well supported by the evidence and is therefore affirmed.

HATHAWAY and HOWARD, JJ., concur.

Note: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.